IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RAYSHAUN M. ROACH,

                           Petitioner,                     OPINION AND ORDER

     v.

                                                  20-cv-1097-wmc
                                                  17-cr-103-wmc

UNITED STATES OF AMERICA,

                           Respondent.

This opinion and order addresses Rayshaun Roach's motion for post-conviction relief under 28 U.S.C. § 2255.  (Dkt. #1.)  Roach advances three arguments for relief. First, he argues that his trial counsel was ineffective for advising that he would be able to appeal certain issues and not objecting to an allegedly altered still photo.  Second, he argues that his appellate counsel was ineffective for not raising preserved issues regarding the district court's denial of his motions to suppress, as well as his ineffective assistance of trial counsel claims, and instead raising a waived issue regarding his conditions of supervised release.  Third, under the general heading of due process violations, he asserts:  (1) a prosecutorial misconduct claim; (2) a challenge to the denial of his motions to suppress; and (3) a claim that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not turning over an affidavit from Deputy Dwayne Shaw.  For the reasons explained below, Roach's ineffective assistance claims fail on the merits, while all of his remaining claims have been procedurally defaulted. Accordingly, Roach's § 2255 motion for post-conviction relief must be denied.

FACTS[1]

## A. Controlled Buys

Law enforcement for the Rock County Sheriff's Department conducted three, controlled buys of heroin from Roach using a confidential informant ("CI") in July and September 2017.  (CR dkts. ##32-1, 32-2, 32-4.)  On July 12, 2017, an individual the CI knew as "Black" arranged to meet at a Family Dollar store in Beloit, Wisconsin.  (CR dkt. #32-1 at 2.)[2]  In the store's parking lot, the CI entered a red Buick registered to Roach and bought 0.5 grams of heroin from "Black," the sole occupant of the red Buick.  (*Id*.)  Afterwards, law enforcement debriefed the CI regarding the transaction.  (*Id*.)  After being shown Roach's booking photo, the CI identified Roach as "Black."  The CI also described "Black" as 6 feet 2 inches tall and weighing 250 pounds, although Roach's presentence investigation report states that he is 5 feet 8 inches tall and weighs 200 pounds.  (PSR (dkt. #53) ¶ 118.)

On September 19, 2017, the CI again arranged to buy heroin from Roach at a Woodman's grocery store in Beloit.  At that location, the CI entered a black Chevy Tahoe, which was also registered to Roach, and bought 1.2 grams of heroin.  (CR dkt. #32-2 at 1-

---

[1] When a defendant seeks post-conviction relief under 28 U.S.C. § 2255, courts review the evidence and draw all reasonable inferences from it "in a light most favorable to the government."  *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000).  Yet a petitioner's pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[2] This opinion and order references the following dockets: this § 2255 case, Case No. 20-cv-1097-wmc; Roach's criminal case, Case No. 17-cr-103-wmc; and his direct appeal, Case No. 18-3096.  The court will use "Dkt." to indicate docket entries in his '1097 § 2255 case; "CR dkt." to indicate docket entries in his '103 criminal case and "APP dkt." to indicate docket entries in his direct criminal appeal.

2.)  During the debrief, the CI confirmed this transaction as well, knowing Roach's real name from Facebook.  (*Id.*)  According to Deputy Skatrud's reports, he followed the Tahoe after this controlled buy to a parking lot, where he observed an individual driving a red Pontiac briefly get into the Tahoe.  (*Id.* at 3; CR dkt. #32-3, at 1.)  As the Tahoe then left the parking lot, Skatrud was able to identify Roach as the driver.  (CR dkt. #32-2, at 3.)[3]

On September 28, 2017, the CI arranged a third heroin buy from Roach near a Beloit laundromat, this time entering a black Dodge Charger, also registered to Roach.  (CR dkt. #32-4, at 2.)  On this occasion, the CI wore a covert camera, which recorded a sale of 1.2 grams of heroin and showed a black male (purportedly Roach) as the driver of the Charger.  (*Id.*)  The CI again told officers that Roach was the seller.  (*Id.*)  After the CI left the Charger, Deputy Skatrud saw the Charger drive across the street to an auto dealership, using binoculars to identify the driver as Roach.  (*Id.* at 3-4.)  A short while later, Deputy Riemer observed Roach park the Charger at 1223 Harvey Street in Beloit, Wisconsin, exit the vehicle, check his mail, and enter the home.  (*Id.* at 5.)

The officers' initial tests of the substances from all three controlled buys were inconclusive for heroin, but each was positive for fentanyl.  (CR dkts. ##32-1 at 2, 32-2 at 2, 32-4 at 2.)  However, the substances later tested positive for both heroin and fentanyl when examined by the Wisconsin State Crime Lab. (CR dkt. #33-7.)

---

[3] Skatrud also reported following and stopping the red Pontiac.  (CR dkt. #32-3.)

**B. Arrest, Search, and Statements**

On October 3, 2017, law enforcement executed a search warrant at 1223 Harvey Street, finding two handguns and 4.8 grams of fentanyl. (CR dkt. #32-7 at 4, 8.) Eventually, officers also spotted Roach leaving a different house and arrested him. (*Id.*) Upon his arrest, Roach admitted to having two guns and drugs in his pockets, as well as ammunition in his pants. (*Id*. at 2-3.) Searching him, officers found about 50 grams of heroin laced with fentanyl, two additional loaded handguns, and ammunition. (*Id*.) During a subsequent interview with officers, Roach further admitted that he sold heroin for money and possessed the firearms for protection. (*Id*. at 9.)

**C. Indictment and Pretrial Proceedings**

Later in October 2017, a grand jury indicted Roach for: (1) three counts of distributing heroin in violation of 21 U.S.C. § 841(a)(1) ("Counts 1-3"); (2) possessing heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) ("Count 4"); (3) possessing firearms in furtherance of distributing heroin in violation of 18 U.S.C. § 924(c) ("Count 5"); and (4) possessing firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count 6"). (CR dkt. #2.)

Roach filed two pretrial motions to suppress. (CR dkts. ##32, 33.) In the first motion, Roach moved to suppress all evidence from his arrest and his post-arrest statements on the grounds that law enforcement lacked probable cause to arrest him. (CR dkt. #32.) Specifically, Roach argued that: (1) the CI described him as being 6 inches taller and 45 pounds heavier than he was; (2) all of the CI's identifications of him were tainted because law enforcement had only showed the CI a picture of him with no other

4

suspects; (3) Deputy Skatrud, who identified Roach, wrote two, inconsistent reports; and (4) the still image of Roach from a covert video of the controlled buy on September 28, 2017, did not contain any distinctive qualities to identify the person in the video as Roach. (*Id*. at 4-7.)  In support, Roach attached a still from the CI's covert video in which the driver's image was obscured by shadows within the vehicle. (CR dkt. #32-6.)[4]

In the second motion, Roach moved to suppress drug evidence obtained from the three controlled buys, asserting that the chain of custody was faulty because: (1) a photograph of law enforcement inspecting evidence from his arrest shows a mugshot of another person at a nearby table, suggesting that officers commingled evidence; (2) the evidence log showed an entry from July 11, 2017, the day *before* the first controlled buy; (3) the drugs from his controlled buy were tagged with certain evidence numbers, but those numbers did not match the identification numbers used by the state crime lab; and (4) it was unclear when the drugs were submitted to the crime lab.  (CR dkt. #33.)

Magistrate Judge Stephen Crocker held a status conference to discuss Roach's request for an evidentiary hearing on both motions to suppress. (CR dkt. #36.)  Judge Crocker not only concluded that the officers' reports "sp[oke] for themselves," but found that there was adequate evidence to support probable cause to arrest even if the challenged evidence was not considered.  (*Id.* at 13.)  As to chain of custody, Judge Crocker held that the documentation appeared to be "regular and error-free."  (*Id.* at 20.)  Thus, Judge Crocker denied Roach's request for an evidentiary hearing.  (*Id.* at 12, 20.)

---

[4] In its response to this motion, the government attached a lightened version of the same, still photo that showed a person resembling Roach.  (CR dkt. #39-2.)

In his subsequent report and recommendation ("R&R"), Judge Crocker further recommended denying both motions.  (CR dkt. #42.)  As to probable cause, Judge Crocker noted the low bar to establish probable cause and reasoned that the totality of the circumstances allowed law enforcement to arrest Roach. (*Id*. at 4-5.)  Specifically, Judge Crocker found that probable cause had been established by the CI's and officers' identification of Roach, the presence of Roach's vehicle at two controlled buys, and the still image from the covert video.  (*Id*. at 5-7.)  Judge Crocker also held that Roach's mere assertion that *he* did not believe Deputy Skatrud's claims about seeing him at two of the controlled buys was insufficient to defeat probable cause.  (*Id*. at 6.)  Finally, Judge Crocker found Roach's concern about the CI's initial inability to identify him was "overblown," since the CI already knew him from previous drug purchases, met with him twice more after identifying him, and never rescinded the identification.  (*Id.* at 6.)

Regarding chain of custody, Judge Crocker noted that courts employed a presumption of regularity for matters of admissibility, assuming that government officials who have custody of evidence discharge their duties properly absent evidence to the contrary.  (*Id*. at 9.)  In this case, Judge Crocker explained that the deputies' reported weights of the packaged drugs that corresponded fairly closely to the weight of the drugs as documented by the state crime lab, adding that the substances also corresponded qualitatively, as all had inconclusive field tests for heroin but tested positive for fentanyl, while in the lab, the substances tested positive for heroin and fentanyl.[5]  (*Id.* at 9.)

---

[5] The drug weights recorded by the lab from the controlled buys were generally less than those documented by officers in the field, although not materially so.  (CR dkt. #39-4.)

Accordingly, Judge Crocker held that Roach's speculative criticisms as to chain of custody were insufficient to support suppressing the drug evidence. (*Id*.)

Over Roach's objection (CR dkt. #44), this court adopted Judge Crocker's R&R and denied both motions. (CR dkt. #46.) The court agreed that the single photo display created no substantial likelihood of misidentification given the overwhelming subsequent identification evidence, even if the initial procedure was suggestive, including that the CI met multiple times with Roach after the photo identification and law enforcement made their own independent identifications. (*Id*. at 4.) In particular, the court held that the CI's arguably inaccurate physical description of Roach was insufficient to warrant suppression given other evidence supporting a finding of probable cause, including officers who identified Roach as the person who sold drugs to the CI, cars registered to Roach were used at the controlled buys,[6] and a still image of the CI's covert video depicted someone who looked like Roach. (*Id*. at 4-5.) Finally, the court rejected Roach's chain of custody arguments, reasoning that the "unlikely possibility" that his evidence was commingled was insufficient to warrant suppression, and the government had adequately explained the numbering systems for Roach's drug evidence. (*Id*. at 5.)

### D. Plea, Sentencing and Appeal

Ultimately, Roach entered into a conditional plea agreement, agreeing to plead guilty to Counts 4, 5, and 6, while reserving his right to appeal the denial of his motions

---

[6] Although the court wrote that Roach used cars registered to him at two of the three controlled buys, police reports show that he used vehicles registered to him at all three buys. (CR dkts. ##32-1, at 2, 32-2, at 2, 32-4, at 2.)

to suppress and to withdraw his plea if his appeal succeeded.[7]  (CR dkt. #45.)  While under oath at his June 2018 plea hearing, Roach acknowledged that no one had made any promises, other than what was contained in the written plea agreement, impacting his decision to plead guilty.  (CR dkt. #71, at 4, 16-17.)  Roach further testified that no one had forced or threatened him to plead guilty.  (*Id.* at 17.)  Following consideration of the PSR and revised PSR, the district court sentenced Roach to a total of 144 months' imprisonment, followed by 3 years of supervised release.  (CR dkt. #69, at 29-30.)

Finally, Roach appealed his convictions to the Seventh Circuit, arguing that a condition of his supervised release prohibiting him from patronizing "any taverns, bars, liquor stores, nightclubs or other establishments where the primary item of sale is alcohol" was impermissibly vague and overbroad.[8]  (APP dkt. #16, at 7.)  In a consolidated appeal, the Seventh Circuit affirmed Roach's convictions, concluding that Roach waived his objection to the conditions of supervised release at his sentencing.  *United States v. Anderson*, 948 F.3d 910 (7th Cir. 2020).

## OPINION

Relief under 28 U.S.C. § 2255 may only be granted if there is "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *Harris v. United States*, 366 F.3d 593, 594

---

[7] Roach entered the plea agreement while his objections to Judge Crocker's R&R were still pending.

[8] Roach also moved the Seventh Circuit to allow him to proceed *pro se* on appeal (APP dkt. #17), but that court denied his motion.  (APP dkt. #18.)

(7th Cir. 2007) (quotation marks omitted).  The court organizes Roach's claims into three groups: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) miscellaneous claims of prosecutorial misconduct, due process violations by the court, and the alleged *Brady* violation.

## I.  Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, Roach must demonstrate: (1) counsel's constitutionally deficient performance; and (2) actual prejudice because of the alleged deficiency. *Strickland v. Washington*, 466 U.S. 688, 687 (1984).  A movant can only establish that his counsel's performance was deficient with a showing that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.  Under the first step of *Strickland*, the movant has the burden to overcome the presumption "that counsel's conduct falls within the wide range of reasonable professional assistance." *Weaver v. Nicholson*, 892 F.3d 878, 885 (7th Cir. 2018) (quotation marks omitted).

Once deficient performance is established, the movant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In the guilty plea context, the defendant must specifically show a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  This probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  With these standards in mind, the court turns to Roach's ineffective assistance claims.

### A. Trial Counsel

#### 1. Plea Agreement

To begin, Roach contends that trial counsel was ineffective in negotiating, then advising Roach to accept, the conditional plea agreement instead of proceeding to trial. Roach further faults trial counsel for telling him that "he'd be able to argue the issues in the appellate court," when those issues turned out to be meritless. (Dkt #1, at 14.)

As for the latter criticism, even accepting Roach's claim that trial counsel told him that "he'd be able to *argue* the [suppression] issues in the appellate court," this is not the same as promising that he would *prevail*. The fact that Roach's appellate counsel found those suppression issues were frivolous and the court of appeals agreed, does not render trial counsel's statement any less true. To the contrary, Roach *was* given an opportunity to make his *own*, pro se argument on appeal but chose not to do so. Moreover, to the extent that Roach now claims he was *promised* a full hearing on appeal, that claim is contradicted by his statement at the plea hearing that no one made any promises, other than what was contained in the written plea agreement, that impacted his decision to plead guilty. (CR dkt. #71, at 16-17.) Statements under oath are presumed true, and Roach has not met his "heavy burden of persuasion" to overcome that presumption. *United States v. Malave*, 22 F.3d 145, 148 (7th Cir. 1994). Further, trial counsel's statement falls within the "wide range of reasonable professional assistance" and is entitled to deference under *Strickland* because his plea agreement did reserve "his right to have an Appellate Court review any adverse determination of his motions to suppress" (CR dkt. #45, at 2), again

without any promise that his appellate counsel or the Seventh Circuit would find the motions any more persuasive than the trial court. *Weaver*, 892 F.3d at 885.

Regardless, Roach does not show actual prejudice. In his reply brief, Roach asserts that his "sole reason" for accepting the plea agreement was "the ability to appeal the adverse determination of both motions," and as it turned out, trial would have been the only option to further argue the issues. (Dkt. #19, at 21-22.) However, a "mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) (quotation marks omitted). For the same reason that trial counsel was not deficient, it is unclear how the outcome of Roach's plea hearing would have been different when his trial counsel negotiated a plea agreement that did in fact preserve his right to challenge the suppression motions on appeal. Moreover, given the overwhelming evidence of his guilt, a jury would have almost certainly have rejected his argument of misidentification, and the issue of false arrest was never for a jury at trial anyway. In short, Roach has wholly failed to establish that his counsel was ineffective or that he was prejudiced by counsel's advice regarding the preservation of the suppression issues for appellate review.

### 2. Objecting to Evidence

Roach next contends that trial counsel was ineffective for not objecting to a purportedly altered image from the CI's covert video of the controlled buy, including that the image was cropped to not show the time stamp at the bottom. Had trial counsel "pursued this issue," Roach also asserts that "it would have proven that [he] had not made a controlled buy" on September 28, 2017, because the timestamp showed a different date.

(Dkt. #19, at 13.)  In support, Roach purports to attach what appears to be a still from the CI's video with "2016/04/21 23:03:38" in the bottom right corner.  (Dkt. #19-3.)

Here, while Roach did raise this argument in his initial brief, he only submitted "evidence" in support with his reply brief (*e.g.*, the claimed altered still), giving the government no chance to respond and arguably waiving the issue.  *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (arguments raised for the first time in reply brief are waived).  Even assuming that Roach's trial counsel knew about the date at the bottom of the still,[9] and that counsel was ineffective for not raising the issue, Roach again cannot show prejudice because exclusion of that still left overwhelming evidence that Roach had sold drugs on September 28, 2017.  Specifically, the CI stated that Roach sold her drugs in a Charger that proved to be registered in his name, *and* Deputy Skatrud saw Roach drive from the drug transaction site to an auto dealership in that same car.  Finally, Deputy Riemer also saw Roach drive the Charger and park it at 1223 Harvey Street.  Thus, Roach has not established prejudice from his trial counsel's "failure" to object to the still.

### B. Appellate Counsel

Roach also asserts that his appellate counsel was ineffective for: (1) failing to raise the probable cause issue; (2) failing to raise the chain of custody issue; (3) raising the waived supervised release argument; and (4) not arguing that trial counsel was ineffective. As explained below, Roach's appellate counsel was not deficient in failing to pursue the

---

[9] The most likely explanation is *not* that the video was taken in April 2016, but that the date was wrong.  A clearer version of the still shows that it was sunny outside (CR dkt. #39, at 2), and the alleged timestamp on Roach's version shows that the video was taken just after 11pm, raising an inference that the inaccurate date stamp was the result of equipment error.  (Dkt. #19-3.)

first and second issues -- probable cause and chain of custody -- because while preserved, both were meritless. *See Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims."). Even if these issues were potentially valid, appellate counsel is not deficient by choosing to challenge a condition of supervised release argument instead of a reserved suppression issue. *See Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015) ("Because appellate counsel is not required to raise every non-frivolous issue on appeal, appellate counsel's performance is deficient under *Strickland* only if [he] fails to argue an issue that is both obvious and clearly stronger than the issues actually raised.") (quotation marks omitted). Finally, as addressed below, ineffective assistance of trial counsel claims are generally inappropriate on direct appeal regardless.

### 1. Probable Cause

This court determined that there was probable cause for Roach's arrest (CR dkt. #46, at 4-5), and while the court of appeals would have reviewed this court's legal determination *de novo*, it would have reviewed its findings of fact for clear error, a standard defendant Roach could not reach. *United States v. Oliva*, 385 F.3d 1111, 1114 (7th Cir. 2004). First, the court credited the CI's identification of Roach, even though the officers presented her with a suggestive single photo of him,[10] reasoning that the CI had known Roach (by the name "Black") well before conducting the drug transactions, and she never recanted her identification of Roach, even after conducting two *more* transactions with him later. While Roach makes much of the CI overstating his height and weight, the court

---

[10] *E.g.*, *United States v. Sanders*, 708 F.3d 976, 985-86 (7th Cir. 2013) (assuming that two-photo array was suggestive).

reasonably concluded that mistake alone was not enough to render her identifications of Roach not credible, particularly since he was seated in a car when they first interacted.

Second, Deputy Skatrud also identified Roach as the driver of both the Tahoe *and* the Charger, during the second and third transactions, respectively. While Roach disputes Skatrud's accounts on the grounds that Skatrud wrote inconsistent reports, implying that he simultaneously followed two vehicles -- Roach in the Tahoe and a red Pontiac -- the court further found Skatrud's reports were not necessarily inconsistent, as (a) each could be read as referring to a group of deputies watching two vehicles; (b) Skatrud could be describing what he Roach's vehicle do while following another vehicle; *or* (c) Skatrud briefly following both vehicles while both were travelling on the same route, but stopping when Roach's Tahoe diverged from the Pontiac's course. (CR dkts. ##32-2, at 3-4, #32-3.) In fact, according to Skatrud's report, a map of the area provided by Roach shows that he only briefly followed Roach over a bridge. (CR dkt. #32-8, at 5.) Moreover, Skatrud's report states that he followed Roach's Tahoe to a parking lot, and identified Roach as he left the parking lot, all *before* Roach met up with the red Pontiac. (CR dkt. #32-2, at 3.) Regardless, since Skatrud's accounts were not necessarily inconsistent, and he could easily have identified Roach before he supposedly followed two vehicles, this court reasonably credited Skatrud's identification and Roach has offered no grounds for the Seventh Circuit to find that ruling clearly erroneous.[11]

---

[11] In fairness to petitioner, Deputy Shaw's forfeiture affidavit in state court also suggests that Deputy Skatrud searched the CI after the second controlled buy on September 19, 2017, instead of following petitioner. (Dkt. #19-2, at 2.) However, as explained above, even without Deputy Skatrud's identification, there was still sufficient evidence supporting probable cause.

Pointing to a map of the areas, Roach also asserts that it would have been "impossible" for Deputy Skatrud to have observed him at the auto dealership following the third controlled drug transaction, because his view would have been obstructed by the laundromat, even with binoculars. However, Skatrud reported parking his undercover vehicle "across Park Avenue," which based on a map of the area, suggests that he would have been able to monitor the dealership. (Dkts. ## 32-4, at 3, 32-8, at 2.)

Finally, setting aside all of the evidence that Roach would now dispute, there is no dispute that *all* three controlled buys occurred in vehicles registered to Roach, and Deputy Riemer also identified him as the driver of the Charger after the third transaction. (CR dkt. #32-4, at 5.) Thus, this uncontested evidence is sufficient alone to support probable cause. *See Illinois v. Gates*, 462 U.S. 213, 230-32 (1983) (probable cause determinations are exercises in holistic, commonsense decisionmaking); *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056-57 (7th Cir. 2011) ("probable cause only requires that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true" (alteration adopted)).

### 2.  Chain of Custody

Roach next contends that appellate counsel was ineffective for not raising the chain-of-custody argument. Here, Roach argues that the chain of custody was unreliable because: (1) someone else's mug shot was in the same room as the drug evidence from Roach's case; (2) the evidence log indicated that some evidence had been received on July 11, 2017, the day *before* the first controlled buy; (3) field tests were conclusive for fentanyl but

15

inconclusive for heroin, while the lab tests were positive for both; and (4) there was no apparent correlation between identification numbers for the evidence and the lab reports.

However, the government has a "low threshold" for establishing a complete chain of custody. *United States v. Marzette*, 105 F.4th 1014, 1018 (7th Cir. 2024). Thus, the court applies a "'presumption of regularity,' presuming that the government officials who had custody of the exhibits discharged their duties properly." *United States v. Prieto*, 549 F.3d 513, 524 (7th Cir. 2008). In contrast, Roach's criticisms of the chain of custody here merely go to the *weight* this evidence should receive at trial when he only offers speculation about potential gaps in the chain of custody. *See United States v. Dewitt*, 943 F.3d 1092, 1098 (7th Cir. 2019) ("Any gaps in the chain of custody or speculative claims of tampering go to the weight of the evidence rather than its admissibility."). Accordingly, even if his counsel had raised the probable cause issue on appeal, the deficiencies he identified would not have warranted suppression of the drug evidence.

### 3. Condition of Supervised Release

Roach next claims that appellate counsel was ineffective for raising an issue about his conditions of supervised release. (Dkt. #1, at 13.) "Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult because the comparative strength of two claims is usually debatable." *Makiel*, 782 F.3d at 898 (quotation marks omitted). As explained above, the suppression issues were meritless given that there was substantial evidence supporting probable cause and Roach only offered speculation about the chain of custody issues.

While Roach would now fault his appellate counsel for raising an issue effectively waived at sentencing, at the time counsel filed his initial brief, it was not at all clear that the issue had been waived.  On the contrary, as the Seventh Circuit explained in its opinion affirming Roach's conviction, it had since 2014 "often excused or overlooked defendants' failures to raise vagueness and other supervised release challenges in the district court, particularly if the defendants had not had clear advance notice of the proposed conditions and the reasons for them." *Anderson*, 948 F.3d at 911.  However, the Seventh Circuit began refining its waiver rules, culminating in its July 3, 2019, decision in *United States v. Flores*, 929 F.3d 443 (7th Cir. 2019), where the court finally "made plain that a defendant who waives a challenge to a supervised release condition will be stuck with the waiver." *Anderson*, 948 F.3d at 911-12.  Since Roach's appellate counsel filed his opening appellate brief in April 2019 (APP dkt. #16) -- three months before the Seventh Circuit decided *Flores* -- counsel was not deficient in raising what turned out to be a waived issue due to evolving Seventh Circuit precedent.

### 4.  Ineffective Assistance of Trial Counsel on Direct Appeal

Finally, Roach argues that his appellate counsel was ineffective for not raising an ineffective assistance of trial counsel claim on direct appeal.  (Dkt. #1, at 13.)  However, the Seventh Circuit has repeatedly observed that claims of ineffective assistance of trial counsel are best brought on collateral review under § 2255, rather than on direct appeal, because those claims "nearly always require more extensive and targeted factual development than is available in the record on direct appeal." *Vinyard v. United States*, 804 F.3d 1218, 1227 (7th Cir. 2015) (citing *Massaro v. United States*, 538 U.S. 500, 504

(2003)).  Indeed, bringing such claims on direct appeal is generally not prudent because it would preclude a later claim in a collateral proceeding, which is why the Seventh Circuit cautions defendants against raising such claims on direct appeal.  *Id*.  Therefore, appellate counsel's decision not to raise an ineffective assistance of counsel claim on direct appeal was reasonable and plainly not ineffective.

## II. Remaining Claims

The court construes Roach's remaining claims as follows: (1) prosecutorial misconduct when the government altered a still image from video footage of a controlled buy to hide that it was taken about a year before the controlled buy; (2) the district court violated Roach's right to due process by denying his motions to suppress and requests for an evidentiary hearing; and (3) the government violated *Brady* by not disclosing an affidavit from Deputy Shaw.  These claims also lack merit.

As an initial matter, Roach could have but did not raise any of these claims in the trial court or on appeal, and "[a] claim cannot be raised for the first time in a § 2255 motion" and a claim is procedurally defaulted "if it could have been raised at trial or on direct appeal."  *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016).  "Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is actually innocent of the crimes of which he was convicted."  *Id.* (quotation marks omitted).  Roach has defaulted these claims by raising them for the first time in his § 2255 motion, and he does not argue his actual innocence.

As a result, Roach's only remaining excuse for his procedural default is cause and prejudice, which also fails.  First, generously construing Roach's motion, the court

understands him to assert that his trial counsel somehow prevented him from raising a prosecutorial misconduct claim. If proven, ineffective assistance of counsel may be considered cause for procedural default. *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994). As the court has already explained, however, even assuming that Roach's trial counsel was ineffective for not raising the altered-photo issue, he has not shown any prejudice given other, overwhelming evidence that he sold heroin to a CI on September 28, 2017. *Strickland*, 466 U.S. at 687. Thus, he has not shown that his procedural default of this claim should be excused.

Second, Roach seeks to relitigate this court's denial of his motions to suppress, but a § 2255 motion is not "a substitute for a direct appeal." *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). While Roach now characterizes his arguments about the motions to suppress in terms of due process, those claims, too, were procedurally defaulted, and he has offered no excuse for failing to raise those claims. Further, as also explained above, Roach has otherwise failed to show that his motions to suppress were improperly denied, or that the court abused its discretion in denying his request for an evidentiary hearing. *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007) (district court's denial of an evidentiary hearing reviewed for abuse of discretion and "[e]videntiary hearings are not required as a matter of course"). Thus, Roach has failed to establish prejudice necessary to overcome his procedural default of this claim as well.

Third, as to Roach's construed *Brady* claim, it is apparently based on Deputy Shaw's forfeiture affidavit filed in state court and stating that Deputy Skatrud searched the CI following the second controlled buy, contradicting Skatrud's report that he followed Roach

after the second controlled buy.  (Dkt. #19-2, at 2.)  However, Roach procedurally defaulted this claim after failing to raise it in the trial court or on direct appeal, and he does not argue that the factual basis for this claim was unavailable, such that there was cause for him not to raise this argument at an earlier stage.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (when a movant can show that "the factual . . . basis for a claim was not reasonably available to counsel," he has shown cause for failing to raise the claim).  Regardless, any *Brady* claim also fails on the merits.  Specifically, to establish such a violation, Roach must show that: "(1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the Government, either willfully or inadvertently; and (3) the denial was prejudicial." *United States v. Thomas*, 835 F.3d 730, 734 (7th Cir. 2016).  Here, Roach has not shown that he was prejudiced by the government's alleged failure to disclose Shaw's affidavit, as he has neither shown a lack of probable cause nor that he would have declined to plead guilty had the government disclosed Shaw's state court affidavit.  *Id.* at 735.

## III.  Certificate of Appealability

Because Roach has not established a valid claim for relief, his motion under 28 U.S.C. § 2255 must be denied.  However, under Rule 11 of the Rules Governing Section 2255 cases, the court must also issue or deny a certificate of appealability when entering a final order adverse to a movant.  A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Tennard v. Dretke*, 542 U.S.

274, 282 (2004) (quoting *Slack v. McDaniel*, 529, U.S. 473, 483-484 (2000)).  For all the reasons just discussed, Roach has not made such a showing and a certificate of appealability will also not issue.

ORDER

IT IS ORDERED that:

1) Rayshaun Roach's motion to vacate his sentence under 28 U.S.C. § 2255 (dkt. #1) is DENIED.

2) No certificate of appealability shall issue.

Entered this 16th day of September, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge